CARNEGIE-MELLON UNIVERSITY ET AL. *v.* COHILL, JUDGE, UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA, ET AL.

No. 86–1021.   Argued November 10, 1987—Decided January 20, 1988

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. WHITE, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 358.

*Walter P. DeForest III* argued the cause and filed briefs for petitioners.

*Allan J. Opsitnick* argued the cause and filed a brief for respondents.*

---

*Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *John K. Van de Kamp*, Attorney General of California, *R. H. Connett*, Assistant Attorney General, and *Roderick E. Walston*, Deputy Attorney General, joined by the Attorneys General for their respective States as follows: *Don Siegelman* of Alabama, *Grace Berg Schaible* of Alaska, *John Steven Clark* of Arkansas, *Warren Price III* of Hawaii, *James T. Jones* of Idaho, *Linley E. Pearson* of Indiana, *David L. Armstrong* of Kentucky, *William J. Guste, Jr.*, of Louisiana, *Brian McKay* of Nevada, *Hal Stratton* of New Mexico, *Anthony J. Celebrezze, Jr.*, of Ohio, *Roger A. Tellinghuisen* of South Dakota, *W. J. Michael Cody* of Tennessee, *Jim Mattox* of Texas, *David L. Wilkinson* of Utah, *Kenneth O. Eikenberry* of Washington, and *Donald J. Hanaway* of Wisconsin; and for the Department of Water and Power of the city of Los Angeles by *Adolph Moskovitz* and *Janet K. Goldsmith*.

JUSTICE MARSHALL delivered the opinion of the Court.

The question before us is whether a federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain.

I

Respondents, William and Carrie Boyle, commenced this action by filing a complaint against petitioners, Carnegie-Mellon University (CMU) and John Kordesich, in the Court of Common Pleas of Allegheny County, Pennsylvania. CMU is William Boyle's former employer; Kordesich is William Boyle's former supervisor. In the complaint, William Boyle charged CMU with violation of federal and state age-discrimination laws, wrongful discharge, breach of contract, intentional infliction of emotional distress, defamation, and misrepresentation. He stated many of the same claims, as well as tortious interference with a contractual relationship, against Kordesich. Carrie Boyle claimed that these alleged wrongs had caused her to suffer a loss of consortium, loss of companionship, and loss of her husband's household services. All of respondents' claims arose from CMU's discharge of William Boyle.

Petitioners removed the case from state court to the United States District Court for the Western District of Pennsylvania under 28 U. S. C. § 1441(a), which allows a defendant to remove an action that falls within the original jurisdiction of the federal district courts.[1] Petitioners stated that the entire lawsuit fell within the original jurisdiction,

---

[1] Section 1441(a) provides:

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

and hence within the removal jurisdiction, of the District Court because the complaint stated a claim arising under the Age Discrimination in Employment Act of 1967, 81 Stat. 602, as amended, 29 U. S. C. §§ 621–634, and the state-law claims in the complaint were pendent to this federal-law claim. Respondents did not contest the removal.

Six months later, respondents moved to amend their complaint to delete the allegations of age discrimination and defamation and the request for damages for loss of consortium. In this motion, respondents stated that they now believed these claims were not tenable. At the same time, respondents filed a motion, conditional upon amendment of the complaint, to remand the suit to state court. Respondents noted that the amendment would eliminate their sole federal-law claim, which had provided the basis for removal of the case, and argued that a remand to state court was appropriate in these circumstances.

After granting the motion to amend, the District Court remanded the remaining claims to the state court in which respondents initially had filed the action. *Boyle* v. *Carnegie-Mellon University*, Civ. Action No. 84–2285 (Oct. 10, 1985). In its opinion, the District Court first examined whether any provision of the federal removal statute, 28 U. S. C. §§ 1441–1451, supported a remand. The court noted that two sections of the statute authorize district courts to remand after removal. Under 28 U. S. C. § 1447(c), a court shall remand any case that "was removed improvidently and without jurisdiction";[2] under 28 U. S. C. § 1441(c), a court may remand any claim that is both independently nonremovable and "separate and independent" of the claim providing the basis for

---

[2] Section 1447(c) provides, in pertinent part:

"If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs."

removal of the case.[3]   The court held that § 1447(c) did not apply because the removal was jurisdictionally proper and that § 1441(c) did not apply because the remaining state-law claims in the case, although independently nonremovable, were pendent to, rather than separate and independent of, the federal-law claim that had provided the basis for removal. The District Court then stated that in *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336 (1976), this Court had suggested that a district court could not remand a removed case or claim without specific statutory authorization.   The District Court noted, however, that a number of appellate decisions since *Thermtron* had approved the remand of re-moved pendent state-law claims when the federal-law claim providing the basis for removal had been eliminated from the suit.   The court found these later decisions persuasive and consequently opted to remand respondents' remaining state-law claims.

Petitioners filed a petition for writ of mandamus with the United States Court of Appeals for the Third Circuit, and a divided panel granted the petition.[4]   41 FEP Cases 1046 (1986).   Both the majority and the dissent agreed with the District Court's conclusion that neither § 1447(c) nor § 1441(c) authorized a remand in this case.   The majority, after noting a division among the Circuits on the question, held that under *Thermtron* this absence of statutory authorization precluded the District Court from ordering a remand.   The dissent

---

[3] Section 1441(c) provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more other-wise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

[4] Petitioners also appealed the District Court's decision.   The Court of Appeals, however, dismissed the appeal on the ground that 28 U. S. C. § 1447(d) bars appeals from remands to state courts with a single exception not applicable to this case.

countered that *Thermtron*'s admonition against remanding removed cases to state court without specific statutory authorization did not extend to cases involving pendent jurisdiction. The dissent noted that under the pendent jurisdiction doctrine, a district court has discretion to dismiss without prejudice cases involving pendent claims, and argued that fairness, efficiency, comity, and common sense supported the authority of removal courts to remand such cases as well.

The Court of Appeals granted respondents' petition for rehearing en banc and vacated the panel opinions and writ of mandamus. 41 FEP Cases 1888 (1986). After the rehearing, the en banc court divided evenly on the question whether the District Court had authority to remand respondents' case to state court. Civ. Action No. 85–3619 (Nov. 24, 1986). Accordingly, the court issued an order denying petitioners' application for a writ of mandamus. This order effectively left undisturbed the remand of respondents' case.

We granted certiorari, 479 U. S. 1083 (1987), to resolve the split among the Circuits as to whether a district court has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain.[5] We now affirm.

## II

The modern doctrine of pendent jurisdiction stems from this Court's decision in *Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966). Prior to *Gibbs*, this Court had recognized that considerations of judicial economy and procedural convenience justified the recognition of power in the federal courts to decide certain state-law claims involved in cases raising federal

---

[5] Compare *In re Romulus Community Schools*, 729 F. 2d 431 (CA6 1984), *Fox* v. *Custis*, 712 F. 2d 84 (CA4 1983), and *Hofbauer* v. *Northwestern National Bank of Rochester*, 700 F. 2d 1197 (CA8 1983) (approving remand of remaining pendent state-law claims when all federal claims were eliminated from case), with *Cook* v. *Weber*, 698 F. 2d 907 (CA7 1983), and *In re Greyhound Lines, Inc.*, 598 F. 2d 883 (CA5 1979) (disapproving such remands).

questions. See *Hurn* v. *Oursler*, 289 U. S. 238, 243–247 (1933). The test for determining when a federal court had jurisdiction over such state-law claims was murky, however, and the lower courts experienced considerable difficulty in applying it.[6] In *Gibbs*, the Court responded to this confusion, and the resulting hesitancy of federal courts to recognize jurisdiction over state-law claims, by establishing a new yardstick for deciding whether a federal court has jurisdiction over a state-law claim brought in a case that also involves a federal question. The Court stated that a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." 383 U. S., at 725. The Court intended this standard not only to clarify, but also to broaden, the scope of federal pendent jurisdiction. See *ibid.* (stating that the prior approach, at least as applied by lower courts, was "unnecessarily grudging"). According to *Gibbs*, "considerations of judicial economy, convenience and fairness to litigants" support a wide-ranging power in the federal courts to decide state-law claims in cases that also present federal questions. *Id.*, at 726.

At the same time, however, *Gibbs* drew a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power. The *Gibbs* Court recognized that a federal court's determination of

---

[6] The test established in *Hurn* v. *Oursler* provided that if a plaintiff presented "two distinct grounds," one state and one federal, "in support of a single cause of action," the federal court had jurisdiction over the entire action, but that if the plaintiff's assertions amounted to "two separate and distinct causes of action," the federal court had jurisdiction only over the federal "cause of action." 289 U. S., at 246. The difficulty with this test, as many commentators noted, was that it centered on the inherently elusive concept of a "cause of action." See, *e. g.*, Shulman & Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L. J. 393, 397–410 (1936).

state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, *Gibbs* emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Ibid.* Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[7] the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Id.*, at 726–727. As articulated by *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.

In the case before us, respondents' complaint stated a single federal-law claim and a number of state-law claims. The state-law claims fell within the jurisdiction of the District Court to which the action was removed because they derived

---

[7] In *Gibbs*, the Court stated that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." 383 U. S., at 726. More recently, we have made clear that this statement does not establish a mandatory rule to be applied inflexibly in all cases. See *Rosado* v. *Wyman*, 397 U. S. 397, 403–405 (1970). The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims.

The Court in *Gibbs* also indicated that these factors usually will favor a decision to relinquish jurisdiction when "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." 383 U. S., at 726.

from the same nucleus of operative fact as the federal-law claim: CMU's dismissal of William Boyle. Under the pendent jurisdiction doctrine set forth in *Gibbs*, however, the District Court had to consider throughout the litigation whether to exercise its jurisdiction over the case. When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction. The question that this case presents is whether the District Court could relinquish jurisdiction over the case only by dismissing it without prejudice or whether the District Court could relinquish jurisdiction over the case by remanding it to state court as well.

This Court's crafting of the pendent jurisdiction doctrine in *Gibbs* strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court. *Gibbs* itself does not directly address this issue; because the plaintiff in *Gibbs* filed his suit in federal court, remand was not an option in the case, and the Court spoke only of dismissal. But *Gibbs* establishes that the pendent jurisdiction doctrine is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity, and *Gibbs* further establishes that the Judicial Branch is to shape and apply the doctrine in that light. Because in some circumstances a remand of a removed case involving pendent claims will better accommodate these values than will dismissal of the case, the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate.

As many lower courts have noted,[8] a remand generally will be preferable to a dismissal when the statute of limitations on

[8] See, *e. g., In re Romulus Community Schools*, 729 F. 2d, at 439; *Kaib v. Pennzoil Co.*, 545 F. Supp. 1267, 1271 (WD Pa. 1982).

the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case. In such a case, a dismissal will foreclose the plaintiff from litigating his claims. This consequence may work injustice to the plaintiff: although he has brought his suit in timely manner, he is time barred from pressing his case.[9] Equally important, and more easily overlooked, the foreclosure of the state-law claims may conflict with the principle of comity to States. The preclusion of valid state-law claims initially brought in timely manner in state court undermines the State's interest in enforcing its law. The operation of state statutes of limitations thus provides a potent reason for giving federal district courts discretion to remand, as well as to dismiss, removed pendent claims.[10]

---

[9] Moreover, if a plaintiff bringing suit in state court knows that, notwithstanding the expiration of a statute of limitations, a federal court to which a case is removed must dismiss the case upon deciding that the exercise of pendent jurisdiction would be inappropriate, the plaintiff may well decline to allege any federal-law claims. By forgoing all federal-law claims, the plaintiff can insulate himself from the risk that the combination of removal, dismissal under the pendent jurisdiction doctrine, and the expiration of a statute of limitations will foreclose him from litigating his state-law claims. Such protection will appear especially attractive to a plaintiff who has any doubt about the validity of his federal-law claims, because he will know that if the district court dismisses these claims on the merits prior to trial, the court may well decide that the rest of the case is unsuitable for resolution in a federal court and therefore dismiss the remaining claims. Thus, a rule that would require federal courts to dismiss a removed case that is not suitable for resolution in a federal court would operate not only to foreclose some plaintiffs from litigating their state-law claims, but also to chill other plaintiffs from bringing their federal-law claims.

[10] Petitioners argue that the federal courts do not need discretion to remand because they can retain jurisdiction over any case in which the statute of limitations has expired. See Brief for Petitioners 20. At least one Court of Appeals has made the identical argument. See *Cook* v. *Weber*, 698 F. 2d, at 909. This solution to the problem of an expired statute of limitations, however, is far from satisfying. Under petitioners' suggested approach, district courts would retain jurisdiction over cases that apart

Even when the applicable statute of limitations has not expired, a remand may best promote the values of economy, convenience, fairness, and comity. Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law. Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money. Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs. Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law. Under the analysis set forth in *Gibbs*, this consequence, even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate.

Petitioners argue that the federal removal statute prohibits a district court from remanding properly removed cases involving pendent claims. This argument is based not on the language of Congress, but on its silence. Petitioners note that the removal statute explicitly authorizes remands in two situations. By failing similarly to provide for remands of removed cases involving pendent claims, petitioners assert, Congress intended to preclude district courts from remanding such cases.

---

from the statute-of-limitations concern properly belong in state courts. There is no reason to compel or encourage district courts to retain jurisdiction over such cases when the alternative of a remand is readily available.

In similar vein, the dissent argues that federal courts do not need discretion to remand because some States have saving clauses that alleviate the statute-of-limitations problem arising from the dismissal of cases. But the existence of such clauses in some States, while diminishing the reason for remand in particular cases, hardly reverses our general conclusion that the balance of factors to be weighed under *Gibbs*, considered in light of the range of state statutes of limitations, supports giving federal district courts the authority to remand cases involving pendent claims.

We cannot accept petitioners' reasoning. We do not dispute that Congress could set a limitation of this kind on the federal courts' administration of the doctrine of pendent jurisdiction. But Congress has not done so, expressly or otherwise, in the removal statute. The principal flaw in petitioners' argument is that it fails to recognize that the removal statute does not address specifically *any* aspect of a district court's power to dispose of pendent state-law claims after removal: just as the statute makes no reference to a district court's power to remand pendent claims, so too the statute makes no reference to a district court's power to dismiss them. Yet petitioners concede, as they must, that a federal court has discretion to dismiss a removed case involving pendent claims. Given that Congress' silence in the removal statute does not negate the power to dismiss such cases, that silence cannot sensibly be read to negate the power to remand them.

Indeed, one section of the removal statute strongly suggests that had Congress decided to address the proper disposition of removed cases involving pendent claims, Congress would have authorized the district courts to remand them. In 28 U. S. C. § 1441(c), Congress dealt with the situation in which a claim that would be removable if sued upon alone is joined with one or more "separate and independent" claims that are not themselves removable. The section provides that the entire case may be removed and that the district court, in its discretion, may either adjudicate all claims in the suit or remand the independently nonremovable claims. See n. 3, *supra*. This section is not directly applicable to suits involving pendent claims, because pendent claims are not "separate and independent" within the meaning of the removal statute. See *American Fire & Casualty Co.* v. *Finn*, 341 U. S. 6, 12–14 (1951) (interpreting the "separate and independent" clause). The section, however, clearly manifests a belief that when a court has discretionary jurisdiction over a removed state-law claim and the court chooses not to exer-

cise its jurisdiction, remand is an appropriate alternative. Thus, the removal statute, far from precluding district courts from remanding pendent state-law claims, actually supports such authority.[11]

As petitioners point out, this Court's opinion in *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336 (1976), contains some language that could be read to support the opposite conclusion. In *Thermtron*, a District Court remanded a properly removed case to state court on the ground that the federal docket was overcrowded. This Court held that the remand was improper. In so doing, the Court stated several times that a district court may not remand a case to a state court on a ground not specified in the removal statute. See *id.*, at 345. See also *id.*, at 345, n. 9 ("Lower federal courts have uniformly held that cases properly removed from state to federal court within the federal court's jurisdiction may not be remanded for discretionary reasons not authorized by the controlling statute"); *id.*, at 351 ("[W]e are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute"). Petitioners, again noting that the removal statute does not explicitly authorize the remand of cases involving pendent state-law claims, argue that *Thermtron* thus compels a holding that such remands are impermissible.

The language from *Thermtron* that petitioners cite, viewed in isolation, is admittedly far-reaching, but it loses controlling force when read against the circumstances of that case. The

---

[11] The dissent's claim that our decision renders superfluous the two provisions of the removal statute that authorize remands is unjustified. The remand power that we recognize today derives from the doctrine of pendent jurisdiction and applies only to cases involving pendent claims. Sections 1441(c) and 1447(c), as the dissent recognizes, do not apply to cases over which a federal court has pendent jurisdiction. Thus, the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all.

*Thermtron* decision was a response to a clearly impermissible remand, of a kind very different from that at issue here. In *Thermtron*, the District Court had no authority to decline to hear the removed case. The court had diversity jurisdiction over the case, which is not discretionary. Thus, the District Court could not properly have eliminated the case from its docket, whether by a remand or by a dismissal. In contrast, when a removed case involves pendent state-law claims, a district court has undoubted discretion to decline to hear the case. The only remaining issue is whether the district court may decline jurisdiction through a remand as well as through a dismissal. The *Thermtron* opinion itself recognized this distinction by stating that federal courts have no greater power to remand cases because of an overcrowded docket than they have to dismiss cases on that ground. *Id.*, at 344. The implication of this statement, which is confirmed by common sense, is that an entirely different situation is presented when the district court has clear power to decline to exercise jurisdiction. *Thermtron* therefore does not control the decision in this case.[12]

---

[12] The dissent's reliance on *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.*, 303 U. S. 283 (1938), is misplaced for a similar reason. In *St. Paul*, the defendant removed a diversity case to federal court, and the plaintiff later reduced the amount of damages claimed to a figure below the jurisdictional amount. The District Court remanded the case to state court, but this Court held that the remand was impermissible. The Court stated that "events occurring subsequent to removal which reduce the amount recoverable . . . do not oust the district court's [diversity] jurisdiction." *Id.*, at 293. The Court then held that because the District Court continued to have diversity jurisdiction over the case, the court could not relinquish the case, whether through a dismissal or through a remand. See *id.*, at 296. The argument cited by the dissent, focusing on forum manipulation concerns, provided an auxiliary policy consideration supporting the Court's determination that the District Court's remand was inappropriate. We agree that forum manipulation concerns are legitimate and serious. See *infra*, at 357. We do not think, however, that *St. Paul* fairly, or even plausibly, can be read to suggest that these concerns necessitate a blanket

Petitioners also argue that giving district courts discretion to remand cases involving pendent state-law claims will allow plaintiffs to secure a state forum through the use of manipulative tactics. Petitioners' concern appears to be that a plaintiff whose suit has been removed to federal court will be able to regain a state forum simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case. Brief for Petitioners 18–20. This concern, however, hardly justifies a categorical prohibition on the remand of cases involving state-law claims regardless of whether the plaintiff has attempted to manipulate the forum and regardless of the other circumstances in the case. A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case. The district courts thus can guard against forum manipulation without a blanket rule that would prohibit the remand of all cases involving pendent state-law claims.

We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine. Such discretion is precluded neither by the removal statute nor by our decision in *Thermtron*. We therefore affirm the decision below denying the petition for a writ of mandamus.

*It is so ordered.*

prohibition on remands when the federal district court's jurisdiction over a case is inherently discretionary.

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUS-
TICE SCALIA join, dissenting.

The Court today discovers an inherent power in the federal
judiciary to remand properly removed cases to state court for
reasons of "economy, convenience, fairness, and comity."
*Ante*, at 351.   Because I continue to believe that cases may
be remanded only for reasons authorized by statute, see
*Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336,
342 (1976), I dissent.

## I

Respondents William and Carrie Boyle brought suit in
Pennsylvania state court against William Boyle's former em-
ployer and supervisor, petitioners Carnegie-Mellon Univer-
sity and William Kordesich, stating claims under both state
law and the federal Age Discrimination in Employment Act
(ADEA), 29 U. S. C. § 626(c)(1).   The case was removed to
the United States District Court for the Western District of
Pennsylvania pursuant to 28 U. S. C. § 1441 on the basis of
the federal ADEA claim.   The Boyles did not contest the re-
moval or move to remand at that time.

After some six months of discovery, the Boyles moved to
delete their age discrimination claim and to remand the case
to state court, explaining that their age discrimination claim
had proved to be "not tenable."   Apparently, the Boyles had
only then discovered that their failure to file a timely age dis-
crimination charge with a federal or state agency precluded
them from asserting a claim under the ADEA.   See 29
U. S. C. §§ 626(d), 633(b).   Counsel for the Boyles explained
before this Court that his principal reason for seeking the
remand was to avoid a prompt trial on the state claims.   Tr.
of Oral Arg. 28–29.   He perceived that the opportunities
for extracting a favorable settlement from Carnegie-Mellon
would be greater if the case were remanded, because the
state court dockets in Allegheny County were considerably
more congested than the federal court dockets in the West-
ern District of Pennsylvania.

The Federal District Court granted the Boyles' motions to amend and to remand. The court recognized that neither 28 U. S. C. § 1447(c) nor 28 U. S. C. § 1441(c), the two statutory provisions authorizing remand, was applicable in this case. The court nonetheless held that, because it could dismiss an action from which all federal claims had been deleted, see *Mine Workers* v. *Gibbs*, 383 U. S. 715, 725–727 (1966), it could also remand such an action to state court.

Carnegie-Mellon then petitioned for a writ of mandamus from the Court of Appeals for the Third Circuit. A divided panel granted the petition and directed the District Court to vacate its remand order. The panel concluded that the District Court was foreclosed by this Court's decision in *Thermtron* from remanding cases to state courts for reasons not specified in a federal statute.

The Court of Appeals reheard the matter en banc. An equally divided court denied Carnegie-Mellon's petition for a writ of mandamus.

## II

This Court has now affirmed. The Court holds that the pendent jurisdiction doctrine set forth in *Gibbs* allows federal judges to remand a properly removed case to state court whenever all federal claims have been deleted. There is no statutory basis for this holding. But the Court discovers an inherent authority to remand whenever a federal judge decides that "the values of economy, convenience, fairness, and comity" would thereby be served. This result is inconsistent with Congress' understanding of the federal courts' remand authority as well as with the precedents of this Court.

Congress has enacted two statutory provisions governing remands from federal court to state court: 28 U. S. C. § 1447(c), which requires the remand of cases removed "improvidently and without jurisdiction," and 28 U. S. C. § 1441 (c), which permits the remand of "separate and independent" claims that are "not otherwise within [the district court's] original jurisdiction." The latter provision does not apply to

pendent claims such as those asserted here. There would have been little reason for Congress to have enacted either § 1447(c) or § 1441(c) had Congress perceived the federal courts to possess an inherent authority to remand claims that might better be decided by the state courts. The Court thus renders § 1441(c) wholly superfluous in contravention of the prevailing rule that courts "should not and do not suppose that Congress intended to enact unnecessary statutes." *Jackson* v. *Kelly*, 557 F. 2d 735, 740 (CA10 1977) (en banc); see also *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955); *Sutton* v. *United States*, 819 F. 2d 1289, 1295 (CA5 1987) (citing *United States* v. *American Trucking Assns., Inc.*, 310 U. S. 534 (1940)); *Ziegler Coal Co.* v. *Kleppe*, 175 U. S. App. D. C. 371, 379, 536 F. 2d 398, 406 (1976).

The Court rejects the foregoing argument on the ground that Congress has provided no express statutory authority for the dismissal of pendent claims. See *ante*, at 354. This ignores the very different origins of the power to dismiss and the power to remand. Courts have historically possessed an inherent power to dismiss suits for discretionary reasons such as failure to prosecute. See, *e. g.*, *Link* v. *Wabash R. Co.*, 370 U. S. 626, 629–631 (1962). The courts have not heretofore been recognized to possess any inherent power to remand.[1]

In *Thermtron*, we held that a Federal District Judge had exceeded his authority in remanding a properly removed diversity action "on grounds not permitted by the controlling statute," 423 U. S., at 345, namely, that the case would be adjudicated more quickly in state court than in federal court. In support of this holding, we observed that "[l]ower federal courts have uniformly held that cases properly removed from

---

[1] A federal court might logically be assumed to have greater inherent authority to transfer a case to another federal court than to a state court. Yet, Congress has also delineated by statute or rule the circumstances in which a case may be transferred from one federal court to another. See, *e. g.*, 28 U. S. C. §§ 1404(a), 1406(a), 2241; Fed. Rule Crim. Proc. 21.

state to federal court within the federal court's jurisdiction may not be remanded for discretionary reasons not authorized by the controlling statute." *Id.*, at 345, n. 9 (citing *Romero* v. *ITE Imperial Corp.*, 332 F. Supp. 523, 526 (PR 1971); *Isbrandtsen Co.* v. *District 2, Marine Engineers Beneficial Assn.*, 256 F. Supp. 68, 77 (EDNY 1966); *Davis* v. *Joyner*, 240 F. Supp. 689, 690 (EDNC 1964); *Vann* v. *Jackson*, 165 F. Supp. 377, 381 (EDNC 1958)). Moreover, in holding that a remand on grounds not specified in the statute was reviewable on mandamus notwithstanding the prohibition on appellate review of remand orders contained in 28 U. S. C. § 1447(d), we expressed skepticism that "Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute." 423 U. S., at 351. Nevertheless, the Court itself grants the district courts virtual carte blanche to remand pendent claims for the amorphous reasons of "economy, convenience, fairness, and comity" that may seem justifiable to the majority but that have not been recognized by Congress. This action cannot be reconciled with the holding in *Thermtron* that cases cannot be remanded for nonstatutory reasons.

The decision today is also difficult to reconcile with *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.*, 303 U. S. 283 (1938), which held that a properly removed diversity action should not have been remanded to state court when the damages at issue later appeared to be less than the jurisdictional amount. In concluding that the status of the case at the time of removal was controlling, the Court reasoned:

> "If the plaintiff could, no matter how *bona fide* his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to

the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election." *Id.*, at 294.

To permit a plaintiff to "bring the cause back to the state court at his election" by voluntarily dismissing his federal claims, as the Court does today, will likewise subject "the defendant's supposed statutory right of removal . . . to the plaintiff's caprice." The Court has thereby provided a new tactical weapon to plaintiffs like the Boyles who may be less interested in securing a prompt trial on the merits than in causing the litigation to become so burdensome to the defendants that they will accede to a favorable settlement.

Nothing in *Gibbs* justifies the result reached today. The majority acknowledges that no "direc[t]" authority for today's holding can be found in *Gibbs*, which involved an action that had been filed initially in federal court. See *ante*, at 351. The *Gibbs* opinion did not even suggest any inherent power in the federal courts to remand pendent claims rather than to retain such claims or to dismiss them without prejudice. And no case here either before or after *Gibbs* provides any stronger support for today's holding.

The Court's decision has the peculiar result of treating plaintiffs who bring suit in federal court less favorably than plaintiffs who bring suit in state court. If the Boyles had commenced this suit in federal court and their federal claims were later dismissed, the Federal District Judge could only have dismissed the remaining pendent claims or decided those claims himself. Because the Boyles instead commenced this suit in state court, however, the District Judge had the additional option of ordering a remand. The principal advantage to plaintiffs of this third option is that their state claims are less likely to be dismissed as time barred.

Accordingly, plaintiffs with claims arising under both federal and state law now will be encouraged to bring suit in state court, even when the state courts are as overburdened as those in Allegheny County are alleged to be, rather than in the federal courts that have been described as the "primary guardians" of federal rights. *Steffel* v. *Thompson*, 415 U. S. 452, 463 (1974). In addition, defendants who are able to afford the costs and delays associated with a one-way trip to federal court but not the additional costs and delays associated with a round trip may now be discouraged from exercising their statutory right to removal in cases involving both federal and state claims.[2]

There is some incongruity in the Court's invocation of federal-state "comity" in support of a holding whose principal effect will be to relieve plaintiffs from state statutes of limitations. See *ante*, at 352. It seems unnecessary for this Court to protect plaintiffs whose federal claims prove "not tenable" from the operation of state statutes of limitations when the States have shown themselves capable of achieving the same result through saving clauses similar to that enacted by Pennsylvania. See 42 Pa. Cons. Stat. § 5535(a) (1982).[3] Neither the parties nor the courts below have suggested that the Boyles would not have been protected by the

---

[2] While the majority contends that the use of remands rather than dismissals will save time and money for the state courts, the record contains no support for this assertion. I would think that the costs to the state courts of processing a new case are not appreciably different from the costs of processing a remanded case. Furthermore, to the extent that the federal courts will now remand pendent claims that they previously would have retained, today's holding may result in increased costs for the state courts.

[3] Section 5535(a) provides, in pertinent part, that "[i]f a civil action or proceeding is timely commenced and is terminated, a party . . . may . . . commence a new action or proceeding upon the same cause of action within one year after the termination." This provision is inapplicable to proceedings terminated by "a voluntary nonsuit, a discontinuance, a dismissal for neglect to prosecute the action or proceeding, or a final judgment upon the merits."

Pennsylvania saving clause had their federal claims been dismissed involuntarily rather than at their own behest.[4]

In sum, because I believe that any authority to remand properly removed pendent claims must come from Congress, I respectfully dissent.

---

[4] The majority largely ignores the availability of state saving clauses in seeking to justify today's result on the ground that plaintiffs like the Boyles would otherwise protect themselves against "the combination of removal, dismissal under the pendent jurisdiction doctrine, and the expiration of a statute of limitations" by forgoing their federal-law claims. *Ante*, at 352, n. 9.